Okay, Mr. Hannon. Good morning, Your Honor. May it please the court, my name is Patrick Hannon. I'm here on behalf of the appellants, two former Glynn County Sheriff's deputies who filed an FLSA claim against the Sheriff of Glynn County, Sheriff Jump, alleging that he failed to pay sufficient overtime as required by the appellant. That's a sovereign immunity question, so we're going to continue with the theme of justiciability today, aren't we? Yes, sir. So the district court denied our motion for leave to amend to add Sheriff Jump in his official capacity. In doing so, the district court said it was bound by this court's decision in Pelletory v. Prime. I'd like to ask about that case. So how is this distinguishable? And then who controls compensation under Georgia law? First, it's distinguishable primarily because the facts of Pelletory include a great deal of state control for the function at issue. And regarding your second question, regarding the function at issue, that's exclusively paid here by the county. Now, there's an issue regarding how to define the function at issue. The district court said that the function at issue was, they used the phrase, determining plaintiff's compensation. That's what we need to look at, the district court said, when deciding 11th Amendment. In Pelletory, this court decided that the function it was reviewing was the Sheriff's exercise of his power to hire and fire. So we think there's a different function. Between hiring and firing and compensation. Right. Okay. So then I looked at Georgia state law and it says that sheriffs are, quote, authorized to contract with the governing body of any municipal corporation located within their respective counties for the purpose of providing law enforcement services to the municipal corporation. And then the law goes on to say, such contracts shall provide for the reimbursement of the county for the costs incurred by the sheriff in providing contract services, including but not limited to the compensation of deputy sheriffs and other personnel. That's Georgia code section 15, 16, 13. How is that not from the state? Well, it's, it is a state delegated or it's, it's what this court has, where the money comes from, isn't it? Well, I think the, the state says that the money has to come from the county. And in fact, OCGA at 15, 16, 20 says the county pays the deputy salaries. It's personal to these contracts though, that requires that the reimbursement for the county for the cost is incurred by the sheriff and providing the contract, right? So the, the, the sheriff pays according to state law requirement, um, which is, is required by state law. Um, ultimately the money comes from the county. Uh, and I understand Pellitori did focus on that wasn't from Pellitori. Sorry. That was just me trying to figure out Georgia law, um, on compensation. Cause I agree. Pellitori is talking about termination and, uh, which is arguably different, uh, HR type of similar to the discussion in Pellitori that the Pellitori says what weighs against, uh, it would weigh against us that it's state mandated that the state law says ultimately the county has to pay. Um, and we distinguish Pellitori because the function at issue there was hiring and firing and the court in Pellitori went through six different ways that the state of Georgia exercises, uh, control over hiring and firing. Um, here we, we don't think the, uh, the state of Georgia exercises any control or at least I don't think the district court said so regarding whether determining compensation the way it, it determined the function at issue. So, so really we're, we're, we're presenting, focusing on two prongs of Amanda's analysis. The first is the degree of control. Um, and the second is, is the funding argument. Um, first regarding the degree of control in Pellitori, uh, there, there was, as I mentioned, a great deal of control over the function here. There is, there is none. What the district court did is defined the function as determining compensation and it went on to analyze a function that's much broader. It relying on this court's decision in Walker v. Jefferson County. It said Walker requires us to define the function here as, as broadly as personnel or, or employment related decisions. Uh, we don't think on the control factor that this court is required to define the function that broadly. Uh, for one thing, Walker v. Jefferson County case didn't do a full Manders analysis. What the court had held in Stewart that Alabama boards of education don't have 11th amendment amenity and the school board there said, well, you ought to revisit that because of some intervening Alabama state law claims. This court did that and ultimately concluded that Stewart, uh, was broad enough to cover both of the consolidated appeals there. So the language that the district court seized on to, to kind of expand the, the definition of the function here was Walker's statement that both cases in the consolidated appeal, uh, it didn't Manders. Oh, it may be that that earlier precedent predates Manders. Manders didn't overrule it in any way. They're both of Manders and that decision are both precedent and binding. Correct. And I think that's what the court was saying in Walker v. Jefferson County, that that prior case is, is broad enough to include both of the consolidated appeals. So the, the, the language that the court seized on, the district court seized on to define the function here broadly as employment related decisions actually didn't require that. It was just a statement about the breadth of the Stewart case, which is the prior pre-Manders case the court was looking at in Walker. Um, so we don't think the district court or this court is bound to define the function, uh, when doing the Manders analysis as employment related decisions. Rather, this court should follow Manders admonition that the arm of the state analysis should be made in light of the particular function in which defendant was engaged when taking the action out of which liabilities asserted to arise. Uh, and here that's what exactly what the district court said initially in its opinion, it was state of Georgia has over the determination of compensation. Um, sorry, that's where I started. Um, I I'm, my understanding is Georgia law requires or authorizes the sheriffs to contract with the local municipalities for the payment of these law enforcement officers. So that's the compensation aspect, right? It, it, it relates to the, the source of the funding wrong. Is that, yes, right. So you're saying that they, well, it relates to compensation, that function, like the officer, the sheriff gets to set the officer compensation through these contracts with the local municipality. So regarding the control factor, then that doesn't, I don't think speak to the decision of whether or not to pay overtime, which is the function here would be the function here as, as narrowly required to be defined under Manders. Um, it would imply that the source of the funds, uh, comes, comes from the, the state, but, but there's counterbalance, there's authority on the other side, 15, 16, 20 says, uh, that state courts, or I'm sorry, the counties provide the deputy sheriff's salaries. Um, so ultimately, we think this is similar, uh, to some of the Florida cases where the funding factor, ultimately, this is paid by the County as, as the paychecks that we appended to the amended complaint show, uh, the source of the funds here ultimately come from the County. Now, uh, there is, uh, an argument regarding Pelletore. Pelletore says, okay, even if the funds come from the County, um, we're going to weigh against you just the fact that the state says the County has to pay. Um, and I don't see how the County really exercises any over any control over the overtime decisions. It seems to me that the sheriff's deterrent termination of what deputies are required to do and how many hours they need to be working all, all in, in the, the enforcement of state law is a state function, not a County function. Well, that, that is attributes all the sheriff's actions to the state. I think you're correct that the sheriff is for law enforcement purposes. I mean, look, you know, the first factor is super easy, right? Right. Sheriffs are defined as arms of the state. I mean, we've said that on multiple occasions, right? And I think we lose that factor, keeping in mind that the state delegated nature of the courts of the sheriff's authority, uh, is right. I mean, let's look at what we said in Pelletore. The key question of the Manders function by function inquiry is not what our sheriffs have for whom sheriffs exercise that power, right? Sheriffs did select deputies to assist them and executing their own duties, but those duties have been delegated to them by the state. So when you make an overtime decision, you're making a state function to stitch decision. Correct. But that ultimately traces to, to Manders factor one, which we lose that language ultimately traces back to footnote 35 of this court's decision in Manders, where it, it responded to the dissents argument regarding saying that every, all state authorities ultimately delegated. This court in Frayer v. Chronister in 2018, uh, considered how much weight do we give to the, to the fact that the, uh, entity's authority is delegated by the state and in Frayer, uh, 9 10 F F third 13 71 said, although that adds some support, it's not going to turn this factor. So, okay. We think it should be considered. Okay. Mr. Hannon, you saved five minutes. Let's hear from us. Hancock. Thank you. Please. The court. I'm Emily Hancock, the police, uh, Glynn County, Georgia and Sheriff Milgram in his individual capacity, uh, to the day's theme of justice, ability, maybe a little different than the other cases. And it's still a sovereign immunity, still just disability. Absolutely. And in, in as much as there's just not much for the court to do here, because this case is pending on all sides. Uh, I, I think the fact that argument is focusing on matters is tacit acknowledgement by the appellants that welts controls completely on the question of whether the district court correctly ruled that Neil jump in his individual capacity is not subject to our president's clear on that point. Uh, and then as far as the managers analysis, uh, I think it's telling that the cases relied on, at least in the opening brief by the appellant. Uh, one of them was keen versus prime, which subsequently reversed or disproved by pellet Terry keen is not controlling law. And most of the criticisms being pulled by the appellant, uh, of the application of the factors here is coming from a case that is not good law. Uh, we said military, I'm sorry. We, we, we made clear in military that Keene's not good law. Absolutely. Uh, and I think any actual comparison of the factors between this case and pellet Terry, there's no meaningful distinction between the compensation decisions being made here and any other employment related decisions. And any distinction there is, I think skews more strongly in favor of the finding that the sheriff acts as an arm of the state. Uh, when performing this function, how state law defines the entity is identical, uh, under either a compensation decision or any other employment related decisions. Uh, what degree of controlled state maintains, uh, to judge myself's comment about a CGA 15, 16, 13. The fact that there is a statute clearly directing payment of deputies specifically, uh, maybe that there's a stronger indication that the state is controlling these compensation decisions that the sheriff is acting on behalf of the state. Is there any other, is there any other Georgia law that would inform this discussion of who's controlling compensation? Uh, I, I think the power comes from serving for deputies with respect to compensation. Uh, that law is it that says the sheriff needs to pay his deputies, uh, on note. And then we quoted, I think, some in our brief from the kick fighter decision, which was unreported from this court. But another panel did look at specifically the question of FLSA claims against a Georgia constitutional official. In that case, a, a clerk of court and found, uh, the military analysis extends equally in that situation. Certainly no daylight between a sheriff and a clerk, uh, as they're both elected constitutional officers. So while kick lighter is not controlling, there's not been any argument presented that there's any flaw with the analysis and kick lighter. Uh, the, the factor of where the entity derives its funds, there's no distinction, uh, here or with respect to any other function. The sheriff is carrying out the money. It's always being directed by the state to flow from county to the sheriff who then has complete discretion over how it is spent, including to pay the deputies. Uh, and I, I don't want to, uh, stand, I don't want to stand up here and talk for 15 minutes and in doing so, you're offering to give us back some time. I will, if there's anything else the court would like to hear about, I'm happy to discuss it. But, uh, I don't think there's 15 minutes worth of things we need to talk about because manders is properly applied in this case. You are, um, you know how to please me. Mr. Hammond, five minutes. I'll try to be brief first regarding the source of the funds. Um, there's a good strategy to this report, dependent opinion back in 2005, Massingill versus Hill. Uh, it's analysis on the funding factor is no longer good law, but we think that the statutes and sites regarding the source of the funding still are, and that's OCGA 48, 5-220 that says county taxes are paid and collected and they, uh, they fund the sheriff's office. And then 15, 16, 20, that says the salaries of the sheriff and his deputies are paid out of the funds provided by the county. Ultimately, um, there is one, one argument I'd like to address regarding a control over state funding. The appellatory said, well, even though the funds may come from the county, this is going to weigh against, uh, county status because the state mandates that they're paid. Uh, in Abu Sayyid in 2005, this court rejected a similar argument in Abu Sayyid report said, or the court was addressing rather whether, um, the state of Florida's residual control over the budgeting there meant that the budgeting source factor offs away, um, in favor of immunity. And this court said, uh, with regard to the source of the funds in Abu Sayyid, the second prong asks, what is the degree of control that the state has over the budgeting process? Uh, and it goes on to say the consideration central on the funding prong is where funds come from. So if ultimately this court decides that the funds do come from the county, then we believe this factor weighs in our favor. Um, just briefly to kind of sum up, we think this case, uh, goes a little bit further than this court has gone in its, in its published decisions at least. Uh, this case presents, if you, if you accept our argument that the function is, uh, determining compensation as we think it should be, because Mander says it has to be that narrow. If you accept that as the definition of the function, then there is no state control over the function at issue, unlike Pelletori. So the question then becomes, well, what emphasis do we give? We think the Frayer decision says you ought not give much weight to the fact that it's the state delegated. Then regarding funding, if you accept that this, these funds come from the county ultimately, um, then to find that those factors weigh against us, and those facts, I believe it goes a little bit further than this court has done in Pelletori. So, uh, we'd also like to make a, a brief pitch for the possibility that this court may consider factors neutral. That's what this court did in, in Frayer. It considered that one of the factors, there was, there was something that the witness said is neutral. So if ultimately this court decides it's a two-two split, or if factor one, which obviously weighs against us, and then, excuse me, factors two and three are neutral, uh, factor four is in our favor. And this court has recently said that factor four is, um, and the wording is most important of the remainder's factors. And that comes from, comes from Frayer, the 2018 decision. And there's a footnote in Frayer that lays out the authority for why factor four is the most important factor, including, uh, aside from it as itself, characterizing Supreme Court state law. So we think if there's an even split, um, we'd ask the court to consider that factor four is the most important and factor four ought to take it in our favor. If, if there are no further questions, thank you very much. Thank you, Mr. Hannum. We are adjourned for the week.